IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CHARLES W. MCKENZIE, JR., | * | |
| Plaintiff, | * | |
| v. | * | CIVIL NO. JKB-24-0025 |
| STEAMSHIP TRADE ASSOCIATION, INC., | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Plaintiff Charles W. McKenzie, Jr.[1] filed suit against Defendant the Steamship Trade Association, Inc. ("STA"). Now pending before the Court is Defendant's Motion for Summary Judgment. (ECF No. 36.) The Motion is fully briefed and no hearing is required. For the following reasons the Motion will be granted, summary judgment will be entered in favor of STA, and the case will be closed.

### I.   *Factual Background*

The Complaint alleges that STA improperly reduced Plaintiff's seniority without considering his disability, in violation of the Americans with Disabilities Act ("ADA"). (*See generally* ECF Nos. 1, 4.)

Plaintiff is a member of a union, the International Longshoremen's Association ("ILA"), Local 333 ("Local 333"). (*See* ECF No. 36-2 ¶ 7 (affidavit of David Hartman, former president of the STA).) The STA was "established to facilitate multi-employer bargaining for its members with the ILA and its Locals 333, 953, and 1429 at the Port of Baltimore." (*Id.* ¶ 3.) As is

---

[1] Plaintiff initially filed his Complaint *pro se* but has been represented by counsel since January 2025.

particularly relevant here, the STA manages a Dispatch Center that dispatches work out from employers seeking to hire work at the Port of Baltimore to individuals like Plaintiff. The STA is responsible for:

> (i) the daily operation and supervision of the Dispatch Center; (ii) acting as the repository for all multiemployer credit-hours for fringe benefit administration; (iii) retaining payroll and contribution information; (iv) maintaining the seniority records of the ILA Locals; (v) coordinating training at the Port; (vi) meeting regularly with its members and the ILA over contract and safety issues; and (vii) administering the collective bargaining agreements with its member-employers and the ILA.

(*Id.* ¶ 6.)

The STA did not employ or supervise Plaintiff. (*Id.* ¶ 4 (Hartman explaining that "[t]he STA has never issued a W-2 to [Plaintiff] and is not recognized as his employer"); ECF No. 36-3 at 7–8 (Plaintiff testifying that he has not received paychecks from STA and that he is not supervised by STA).)

There are two ways Local 333 members like Plaintiff receive work. "The primary means of hiring is by way of 'prior day ordering.'" (ECF No. 36-2 ¶ 12.) Through that process, when employers like Ports American Chesapeake, LLC ("PAC") require a stevedoring gang, they must hire from a list of permanent gangs. (*Id.* ¶¶ 12–13.) Plaintiff is a member of the "Purnell gang," which is one such gang. (*Id.* ¶ 12.) If a particular gang is "on orders" from PAC, members of that gang members must work for PAC, or else remain ineligible to work for any other employer during that period. (*Id.* ¶ 13–14.) Plaintiff, as a member of the Purnell gang, can work each time that gang is on prior day orders from PAC. (*Id.*) His work through this "prior day ordering" means of assignment has been unaffected by his allegations regarding reductions in his seniority. (*Id.*)

When the Purnell gang is not on prior day orders from PAC, its members can work other jobs with PAC or other employers. (ECF No. 36-2 ¶ 14.) "These individual work orders are

'called' in the [STA] Dispatch Center and the individual with the skill set and the highest port-wide seniority is referred to the job." (*Id.*) In this case, Plaintiff disputes reductions in his port-wide seniority, which placed him behind other Local 333 members with higher port-wide seniority. (*Id.*)

Local 333 members' seniorities are based upon rules "agreed upon by the STA-represented employers and Local 333." (ECF No. 36-2 ¶ 9.) "[T]he STA does not determine an individual's seniority or seniority sequencing; that task is left to the STA-ILA Seniority Board [the 'Seniority Board']." (*Id.*) The Seniority Board consists of union and employer representatives (and not of STA representatives). (ECF No. 36-4 at 5 (STA-ILA Agreement providing that the Seniority Board "shall consist of the President and the Vice President of Local 333, and two (2) other elected Union Officials" and that "[t]he employers shall be entitled to four (4) members representing the employers").) The STA does not have a vote on the Seniority Board. (*Id.* ("At all meetings, the employer members shall have a total of four (4) votes and the Union members shall have a total of four (4) votes").) In the event that the Seniority Board is unable to reach an agreement, the matter is to be resolved under certain grievance procedures. (ECF No. 36-4 at 6.) However, there is no evidence that the Seniority Board was unable to reach an agreement here.

Plaintiff's seniority was reduced twice by the Seniority Board, once in 2017 for failing to work the requisite number of hours in 2016, and once in 2018 for failing to work the requisite number of hours in 2017. Plaintiff contends that this was in violation of the ADA because the Seniority Board did not take into account his disability in making the seniority reductions.

## II.   *Legal Standard*

Federal Rule of Civil Procedure 56 provides that a party can move for summary judgment on a "claim or defense—or the part of [any] claim or defense," provided it shows "that there is no

3

genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If a party carries this burden, then the Court will award summary judgment, unless the opposing party can identify specific facts, beyond the allegations or denials in the pleadings, that show a genuine issue for trial. Fed. R. Civ. P. 56(e). If sufficient evidence exists for a reasonable factfinder to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented, and summary judgment will be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### III.   *Analysis*

The Court concludes that there is no genuine dispute as to the STA's role in determining Plaintiff's seniority, and summary judgment will be awarded to STA. Because the Court so concludes, it does not address STA's other arguments in favor of dismissal and summary judgment.

The record reflects no genuine dispute with respect to the fact that STA does not make seniority decisions, and did not make seniority decisions with respect to Plaintiff in particular. Rather, the record reflects that seniority decisions were made by the Seniority Board, which was made up of representatives from Local 333 and employers. The record reflects that the STA did not have a vote with respect to seniority decisions. In short, STA did not discriminate against Plaintiff in violation of the ADA when Plaintiff's seniority was reduced because STA had no role in determining Plaintiff's seniority.

Plaintiff's arguments to the contrary are unavailing. Plaintiff argues that STA cannot avoid liability because it exerted "substantial control over the seniority process." (ECF No. 38 at 12.)

4

Plaintiff explains that "[t]he evidence demonstrates the STA's direct involvement [in the seniority process] through: 1. The STA President's authority to sign and issue all Seniority Board decisions[;] 2. The STA's administration of the seniority system through its dispatch procedures[;] 3. The STA's maintenance and enforcement of seniority records[;] 4. The STA's role in processing and responding to accommodation requests." (*Id.*)

With respect to the first item, Plaintiff does not explain why the STA President's authority to sign and issue Seniority Board decisions means that the STA has any involvement in seniority decisions. This is pure speculation on Plaintiff's part, and he points to no evidence in the record that reflects that the STA President's signature reflects any decision-making on STA's part. Rather, while STA representatives attended Seniority Board meetings, the record reflects that STA representatives did not have a vote at these meetings.

With respect to the second and third items—that the STA administered the seniority system and maintained those records—this likewise does not reflect that the STA had anything to do with seniority *decisions*. Rather, the record reflects that STA acted as a repository for seniority information due to the way that work is dispatched, but that STA did not play a role in making any seniority determinations.

Finally, Plaintiff points to "STA's role in processing and responding to accommodation requests," but points the Court to no evidence on that score. The record does not support this contention. Rather, the record reflects that it was union representatives who played some role in handling accommodation requests.[2]

Thus, the Court concludes that it must grant summary judgment in STA's favor.

---

[2] The Court is unimpressed with Plaintiff's arguments that, as a *pro se* Plaintiff, he should be afforded some latitude with respect to naming the correct Defendants. While Plaintiff initially filed this matter *pro se*, he has been represented by counsel since January 2025, and the briefing associated with the pending Motion was filed by counsel.

### *IV.  Conclusion*

A separate order will issue granting summary judgment in STA's favor and closing this case.

DATED this 20 day of August, 2025.

BY THE COURT:

_____
James K. Bredar
United States District Judge